UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GERALDINE HARPEN     :  CASE NO. _____
1004 Rose Circle        :
Park Hills, KY 41011      :  Judge _____
             :
   Plaintiff,      :
             :  **COMPLAINT WITH JURY DEMAND**
v.            :  **ENDORSED HEREON**
             :
THE CHRIST HOSPITAL    :
a/k/a The Christ Hospital Health Network :
2139 Auburn Avenue      :
Cincinnati, OH 45219     :
             :
   Defendant.     :

## I. THE PARTIES, JURISDICTION AND VENUE

1.  Plaintiff Geraldine Harpen (hereafter "Plaintiff") is a former employee of Defendant The Christ Hospital a/k/a The Christ Hospital Health Network (hereafter referred to individually and collectively as "Defendant").

2.  Defendant has been at all material times an "employer" within the meaning of Section 4112.01(A)(2) of the Ohio Revised Code, the Americans With Disabilities Act, as amended ("ADAA"), and the Family Medical Leave Act ("FMLA").

3.  Defendant has at all material times done business in Hamilton County, Ohio.

4.  The wrongful conduct alleged herein occurred in Hamilton County, Ohio.

5.  The claims alleged herein arose in Hamilton County, Ohio.

6.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 because it arises under federal law, specifically the ADAA and the FMLA.

-1-

7.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332 because it is a controversy between citizens of different States and the amount in controversy exceeds $75,000, excluding interest and costs.

8.      This Court also has pursuant to 28 U.S.C. §1367 supplemental jurisdiction of the state law claims alleged herein.

## II. <u>FACTUAL ALLEGATIONS</u>

9.      Plaintiff began her employment with Defendant in April 2009.

10.     Plaintiff was while employed a Certified Nurse Practitioner (hereafter "NP").

11.     Plaintiff began in July 2020 to report to Jeff Hutchins, Associate Director Workforce Relations Analytics.  Hutchins reported to Shelley Spencer, VP Chief People and Marketing Officer.

12.     Plaintiff had while employed by Defendant a "disability" within the meaning of the ADAA and Section 4112 of the Ohio Revised Code.  For example, Plaintiff had while employed, and was treated for, a major depressive disorder.  Plaintiff's impairment substantially limited at least one of her major life activities.  In addition, Plaintiff had a record of such an impairment and Defendant regarded her as having such an impairment.

13.     Plaintiff told Spencer about her "disability".  For example, Plaintiff described for Spencer her symptoms.  She also exhibited those symptoms in Spencer's presence.

14.     In addition, Plaintiff's healthcare providers detailed for Defendant the diagnoses and symptoms of her "disability" in connection with her request for a leave of absence under the FMLA.

15.    Plaintiff's request for an FMLA leave of a absence was also a request under the ADAA for a reasonable accommodation relating to her "disasbility".

16.    On November 25, 2020, Plaintiff began her FMLA leave of absence.

17.    Hutchins confirmed in an e-mail to Plaintiff the position description in effect when her FMLA leave began was still in effect on December 15, 2020.

18.    On February 8, 2021, well before she would have exhausted her twelve weeks of leave entitlement under the FMLA, Plaintiff returned from leave.

19.    Despite Hutchins' December 15, 2020 e-mail, the description of the position to which Plaintiff was returned was materially different from the position description in effect when her FMLA leave began.

20.    Defendant presented to Plaintiff a materially different position description in order to encourage her to leave.

21.    Defendant also offered Plaintiff money in order to encourage her to leave.

22.    Plaintiff refused Defendant's offer.

23.    While employed by Defendant, Plaintiff consulted with an attorney and on March 10, 2021, Plaintiff's attorney corresponded with Defendant's Vice President and Chief Legal Officer (hereafter "March 10 Correspondence").

24.    The March 10 Correspondence notified Defendant that Plaintiff's attorney was continuing to investigate claims Plaintiff had arising from her employment with the Defendant, and specifically claims arising under the FMLA and the federal and state statutes prohibiting "disability" discrimination in employment.

25.     The March 10 Correspondence also notified Defendant it had violated the FMLA and its implementing regulations upon Plaintiff's return from leave.  Specifically, the March 10 Correspondence asserted Plaintiff was "entitled to be returned to the same position [she] held when [her] leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment."  (March 10 Correspondence, p.2) (quoting 29 C.F.R. §825.214) In further support of Plaintiff's position, the March 10 Correspondence quoted 29 C.F.R. §825.215(a):

> An equivalent position is one that is <u>virtually identical</u> to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status.  It must involve <u>the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority</u>.

*Id.* (emphasis added).

26.     The position described upon Plaintiff's return to work was not "virtually identical" to the position described by Hutchins as of December 15, 2020.

27.     On August 26, 2021, Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC") a Charge of Discrimination alleging "disability" discrimination and retaliation.

28.     The EEOC assigned to Plaintiff's Charge of Discrimination the number 473-2021-01527.

29.     Defendant thereafter discriminated against Plaintiff and eventually terminated her employment, not only because of "disability", but also because she had consulted an attorney and had opposed what she believed to be "disability" discrimination in employment and had filed a

-4-

Charge of Discrimination and also because she had taken leave under the FMLA and had opposed what she believed to be a violation of the FMLA.

30.     For example, Hutchins unduly criticized Plaintiff's work and denied her resources needed to most effectively do her job and he did so in order to force her to quit.

31.     Defendant, including Hutchins, discriminated and retaliated against Plaintiff by presenting to her on October 29, 2021 an unwarranted performance review.

a.      The "review period" of the review was July 1, 2020 to June 30, 2021.  This review period included time before and after Plaintiff took leave under the FMLA to be treated for a "disability".  However, the review did not recognize substantial contributions and excellent performance Plaintiff exhibited during the "review period" before she went on leave, i.e. from July 1, 2020 to November 25, 2020.

b.      The review assigned Plaintiff an "overall performance" rating of "Improvement – You have opportunities to grow & develop." This "overall rating" was the lowest of the three (3) possible performance ratings.  In all her years with Defendant Plaintiff had never received such an "overall performance" rating.  Because of this "overall rating", Plaintiff was unable to transfer to another position within Defendant.

c.      The review criticized Plaintiff for having "overly emotional communications."  When meeting with Plaintiff on October 29, 2021 to give her the review, Hutchins specifically referred to Plaintiff's May 10, 2021 e-mail to him, Spencer and Christine Chadwell, Defendant's Director of Advanced Practice Providers, as an example of an "overly emotional communication."  Plaintiff's May 10, 2021 e-mail protested what she believed to be a violation of the laws prohibiting "disability" discrimination in employment.  Plaintiff's May 10, 2021 e-mail was not an "overly emotional communication" but rather the exercise of her right to oppose what she believed to be unlawful employment discrimination.

d.      The low "overall rating" of Plaintiff's review was inconsistent with the beliefs of others in her department and also with Spencer's positive evaluation of Plaintiff's performance.  Spencer had just recently, clearly and publicly, stated her belief that Plaintiff continued to be an excellent leader, that Plaintiff's department was well run and that Plaintiff was responsible for it doing so.  Spencer proclaimed this at a group meeting on December 14, 2021.

e.  At that December 14, 2021 meeting, Spencer addressed Plaintiff's subordinates. Spencer began by commenting on what a fine department they had, but she wanted "to mention the department was so great because of Geri." When Plaintiff responded by complimenting her team, Spencer stated: "Geri, you are so humble but you are the leader that makes it all happen."

32.  Particular entries in the performance review were either false or otherwise inappropriate. Set forth below are some of these entries:

a.  Hutchins' assertion under Goal #1 of the review, that Plaintiff was provided "more than ample resources" to enable her to complete her "full NP orientation," was false. For the three (3) months between Kim Martin, Defendant's prior Workers Compensation Case Manager, and the eventual recruitment and hiring of Luis Abanto, RN in that position, Plaintiff alone functioned as Defendant's Workers Compensation Case Manager. This substantially reduced the time Plaintiff had to complete her orientation. Hutchins implicitly recognized this fact in the review, wherein he appeared to take credit for hiring a full-time, 40-hour a week Case Manager (Abanto). Hutchins thereby implicitly recognized Plaintiff had spent three (3) full-time months of her time doing Abanto's job to the exclusion of her orientation

b.  Hutchins' further assertion, that he freed up Plaintiff's time for orientation activities by offering to utilize our "TPA for up to 90 days additional case mgm't support," was also false. Defendant's TPA (third party administrator) was Hunter Consulting. Hunter Consulting provided to Defendant clerical, not case management, support.

c.  Plaintiff did not, as the performance review suggested, blindside Hutchins and Spencer by cancelling the remainder of her NP training without first having had a "discussion with" her "leadership about doing so." Plaintiff repeatedly told Hutchins and Spencer she intended to postpone, not cancel, the training for her orientation because she was unable to simultaneously meet the demands of the department and her orientation. At no time did either Hutchins or Spencer tell her to not proceed as Plaintiff had told them she intended. There was much "discussion" about the situation before the fact, not "after the fact", as the review suggested.

33.  In addition to giving Plaintiff an unwarranted performance review, Hutchins also required her to provide by January 14, 2022 an unwarranted performance improvement plan.

-6-

34.     Thereafter, on January 21, 2022, Plaintiff filed with the EEOC and OCRC an Amended Charge of Discrimination.

35.     Plaintiff notified Defendant of her filing this Amended Charge of Discrimination before it decided to terminate her employment.

36.     Plaintiff e-mailed to both Hutchins and Spencer on January 21, 2022 a copy of the Amended Charge of Discrimination.

37.     In that e-mail Plaintiff reminded Hutchins he had made clear during their January 5, 2021 meeting he did not want her to address inaccuracies in her performance review in a "rebuttal" to him.

38.     On February 10, 2022, shortly after being notified of the filing of the Amended Charge of Discrimination, Defendant terminated Plaintiff's employment.

39.     Defendant's reason for terminating Plaintiff's employment is pretextual.

40.     Defendant falsely characterized Plaintiff's termination as a voluntary resignation.

41.     For example, Deborah Hayes, Defendant's President and Chief Executive Officer, sent to Plaintiff a letter dated March 1, 2022, stating in part:

> Effective 3/1/2022, the Board of Directors has accepted the voluntary resignation of your Medical Staff membership and clinical privileges at The Christ Hospital Health Network.

42.     Defendant discriminated against Plaintiff and terminated her employment because of "disability".

43.     Defendant discriminated against Plaintiff and terminated her employment because she had opposed unlawful employment discrimination and had filed Charges of Discrimination with the EEOC and the OCRC.

44. Defendant discriminated against Plaintiff and terminated her employment because she had requested and taken leave under the FMLA.

45. Defendant discriminated against Plaintiff and terminated her employment because she had opposed conduct she believed to be a violation of the FMLA.

46. Defendant violated the FMLA by returning Plaintiff to a position that was not "virtually identical" to her "former position". *See* 29 C.F.R. §825.215(a). *See also* 29 U.S.C. §2614(a)(1).

47. Defendant discriminated against Plaintiff and terminated her employment because she had consulted with an attorney.

48. On April 11, 2022, Plaintiff filed with the EEOC and the OCRC her Second Amended Charge of Discrimination alleging "disability" discrimination and retaliation.

49. On August 23, 2022, the EEOC issued with respect to Plaintiff's Charge of Discrimination, as originally filed and as amended, a Dismissal of Charge and Notice of Your Right to Sue (hereafter "Notice of Right to Sue").

50. Plaintiff has filed this action within the period prescribed by the Notice of Right to Sue.

51. All procedural prerequisites to the maintenance of this action have been satisfied.

52. The discrimination and wrongful conduct alleged herein was willful, wanton, and malicious and was done in gross and reckless disregard of Plaintiff's legal and employment rights.

53. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered and will continue to suffer loss of pay and benefits, mental and emotional anguish and distress, humiliation, embarrassment and loss of reputation.

## COUNT I
## (Disability Discrimination)
## (Federal Law)

54.     Plaintiff realleges paragraphs 1 through 53 of this Complaint.

55.     By discriminating against and terminating the employment of Plaintiff because of "disability", Defendant violated the ADAA.

## COUNT II
## (Disability Discrimination)
## (Ohio Law)

56.     Plaintiff realleges paragraphs 1 through 55 of this Complaint.

57.     By discriminating against and terminating the employment of Plaintiff because of "disability", Defendant violated Section 4112 of the Ohio Revised Code and is therefore subject to this civil action.

## COUNT III
## (Retaliation)
## (Federal Law)

58.     Plaintiff realleges paragraphs 1 through 57 of this Complaint.

59.     By discriminating against and terminating the employment of Plaintiff because she opposed conduct she believed violated the federal and state laws prohibiting "disability" discrimination and because she had filed with the EEOC and OCRC Charges of Discrimination, Defendant violated the ADAA.

## COUNT IV
## (Retaliation)
## (State Law)

60.     Plaintiff realleges paragraphs 1 through 59 of this Complaint.

61.    By discriminating against and terminating the employment of Plaintiff because she opposed conduct she believed violated the federal and state laws prohibiting "disability" discrimination and because she had filed with the EEOC and OCRC Charges of Discrimination, Defendant violated Section 4112 of the Ohio Revised Code and is therefore subject to this civil action.

## COUNT V
## (FMLA)
## (Retaliation For Taking FMLA Leave)

62.    Plaintiff realleges paragraphs 1 through 61 of this Complaint.

63.    By discriminating against Plaintiff and terminating her employment for taking FMLA leave, Defendant violated the FMLA and interfered with, restrained and denied her the exercise of her rights under the FMLA as stated therein and in the regulations of the Secretary of Labor.

## COUNT VI
## (FMLA)
## (Retaliation For Opposing FMLA Violation)

64.    Plaintiff realleges paragraphs 1 through 63 of this Complaint.

65.    By discriminating against Plaintiff and terminating her employment for opposing what she believed to be a violation of the FMLA, Defendant violated the FMLA and interfered with, restrained and denied her the exercise of her rights under the FMLA as stated therein and in the regulations of the Secretary of Labor.

## COUNT VII
## (FMLA)
## (Failure To Restore)

66.    Plaintiff realleges paragraphs 1 through 65 of this Complaint.

67.     By failing to restore Plaintiff to her former position or to a substantially equivalent position upon her return from FMLA leave, Defendant violated the FMLA and interfered with, restrained and denied Plaintiff the exercise of her rights under the FMLA as stated therein and in the regulations of the Secretary of Labor.

**COUNT VIII**
**(Wrongful Discharge In Violation of Public Policy)**
**(Consulting An Attorney)**

68.     Plaintiff realleges paragraphs 1 through 67 of this Complaint.

69.     Defendant terminated Plaintiff's employment because she had consulted with an attorney.

70.     Clear public policy in Ohio encourages persons to consult with an attorney and prohibits employers from terminating employees for doing so.

71.     Termination of Plaintiff's employment under the circumstances alleged herein jeopardizes this clear public policy.

72.     Plaintiff's termination was motivated by her conduct related to this clear public policy.

73.     Defendant lacked an overriding legitimate business justification for Plaintiff's termination.

74.     Defendant is liable to Plaintiff in tort for terminating her employment for consulting an attorney.


WHEREFORE, Plaintiff demands judgment against Defendant for an amount to be determined at trial, for interest, costs and attorney's fees.   Specifically, Plaintiff demands

compensatory and punitive damages, back pay and lost benefits, liquidated damages, front pay, attorney's fees and costs, pre and post-judgment interest and all other appropriate legal, declaratory and equitable relief.

Respectfully submitted,

/s/ Mark J. Byrne
**MARK J. BYRNE (0029243)**
**KATHLEEN BYRNE (0099931)**
Trial Attorneys for Plaintiff
JACOBS KLEINMAN SEIBEL & McNALLY CO.
The Cincinnati Club
30 Garfield Place #905
Cincinnati, OH 45202
Phone: 513-381-6600
e-mail: mbyrne@jksmlaw.com

Co-Counsel:

/s/ Martin McHenry
**MARTIN McHENRY (0022543)**
Attorney for Plaintiff
5856 Glenway Avenue
Cincinnati, OH 45238
Phone: 513-241-0441
e-mail: martinm@mmchenrylaw.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


Respectfully submitted,


  /s/ Mark J. Byrne
**MARK J. BYRNE (0029243)**
**KATHLEEN BYRNE (0099931)**
Trial Attorneys for Plaintiff
JACOBS KLEINMAN SEIBEL & McNALLY CO.
The Cincinnati Club
30 Garfield Place #905
Cincinnati, OH  45202
Phone:  513-381-6600
e-mail:  mbyrne@jksmlaw.com


Co-Counsel:

  /s/ Martin McHenry
**MARTIN McHENRY (0022543)**
Attorney for Plaintiff
5856 Glenway Avenue
Cincinnati, OH  45238
Phone:  513-241-0441
e-mail:  martinm@mmchenrylaw.com